Bill WEISS, d/b/a Century Commercial
Park, Plaintiff and Appellee,

v.

Clifford D. ANDERSON, a/k/a C.D.
Anderson, d/b/a Import Repair,
Defendant and Appellant.

Civ. No. 10438.

Supreme Court of North Dakota.

Nov. 23, 1983.

Wheeler, Wolf, Peterson, Schmitz, McDonald & Johnson, Bismarck, for plaintiff and appellee; argued by Steven Latham, Bismarck.

E.J. Rose, Bismarck, for defendant and appellant; argued by E.J. Rose, Bismarck.

ERICKSTAD, Chief Justice.

Clifford D. Anderson appeals from a judgment entered by the District Court of Burleigh County, dated February 1, 1983, entitling Bill Weiss, doing business as Century Commercial Park, to recover from Anderson rents due under the terms of an oral lease in the amount of $10,386.55 plus costs and disbursements. We affirm.

On or about September 1, 1979, Anderson, in need of a building within which to operate his automobile repair business, contacted Nola Weiss, a licensed real estate broker, and to her indicated his interest in certain real property advertised for rent and owned by Nola's father, Bill Weiss. Both Nola and Bill were involved in negotiations with Anderson concerning the terms of a lease to the property, which consisted of a lot and building located in Bismarck, North Dakota. The parties agreed, shortly thereafter, that in exchange for monthly rental payments, Bill Weiss would give Anderson temporary possession of the property. The specific terms of the oral lease are now in dispute.

From September, 1979, to October, 1981, Anderson issued numerous checks, made payable to and accepted by Bill Weiss, which represent rental payments made by Anderson while in possession of the property. Anderson's initial payment in September, 1979, consisted of a check drawn on an account entitled "Capital Rentals & Import Repair," in the amount of $1,800. From October, 1979, through April, 1980, Anderson issued seven checks, each in the amount of $1,850, one drawn on the account mentioned above and six drawn on an account entitled "Import Repair Self Service, Inc." Anderson's automobile repair business, known at the time of trial by the name of Import Repair & Body Shop, Inc., a North Dakota corporation, was not incorporated in this state, however, until February 27, 1980.

From May, 1980, through October, 1981, Anderson's monthly rental payments to Bill Weiss varied in amount from $1,000 to $1,500, with the exception of a payment made by check on December 6, 1980, in the amount of $2,000 which Anderson contends was issued by an individual not authorized to do so. Nola Weiss sent Anderson several statements alleging he owed additional money for rent due under the terms of the oral lease. These statements indicated that Anderson's monthly rent obligation under the lease was $1,850.

Bill Weiss initiated this action on June 8, 1981, by service of summons and complaint, which complaint alleged that he leased, from month-to-month, the premises to Anderson at a monthly rental of $1,850, and that he had made demands upon Anderson for payment of rent due under the lease which Anderson refused to pay. On September 17, 1981, Anderson was served with notice to vacate the leased premises. He did so on October 15, 1981.

The case was tried to the trial court on January 28, 1983, after which the court issued its findings of fact, conclusions of law, and order for judgment. The pertinent findings of the trial court read as follows:

"I.

"That the plaintiff Bill Weiss, and the defendant Clifford D. Anderson entered into an oral lease agreement on or about September 1, 1979, with rental payments

to be made by the defendant in the amount of $1,850.00 per month.

### "II.

"That at the time of the entry into the oral lease agreement between the parties, there was no corporation of the defendants in existence and the plaintiff had no knowledge that the defendant was acting in any other than a personal capacity.

### "III.

"That the defendant incorporated the business being conducted in the premises leased from the plaintiff on February 27, 1980, but there was no renegotiation of the lease agreement or substitution of parties.

### "IV.

"There was never any agreement between the parties to reduce the monthly rental rate from $1,850.00."

Based upon its findings, the trial court made the following conclusions of law:

### "I.

"As there was no disclosure made by the defendant, C.D. Anderson as to the existence of any corporation that would be a party to the lease agreement, the defendant is personally liable for the rental payments.

### "II.

"The subsequent incorporation of the business located in the building leased by the defendant did not change the landlord/tenant relationship of the parties.

### "III.

"Payment by the defendant of monthly rental payments less than $1,850.00 did not alter the oral lease agreement between the plaintiff and the defendant."

Following the issuance of the trial court's findings of fact, conclusions of law,

and order for judgment, a judgment in favor of Bill Weiss and against Anderson for unpaid rent in the amount of $10,386.55 plus costs and disbursements was entered. Anderson appeals from that judgment and contends that the trial court erred in its determination that he entered into the lease as an individual and not as a corporation and that the rental rate under the lease was $1,850 per month.

■ We consider first Anderson's contention the trial court erred in finding the parties agreed to a rental rate of $1,850 per month. Rules of construction relating to contracts generally apply in the construction of a lease. *Hager v. Devils Lake Public School District*, 301 N.W.2d 630, 633 (N.D.1981); *Anderson v. Blixt*, 72 N.W.2d 799, 804 (N.D.1955). The trial court's construction of the terms of the oral lease, that Anderson was to make rental payments in the amount of $1,850 per month, is a finding of fact governed by Rule 52(a) of the North Dakota Rules of Civil Procedure. *See North Central Jobbers v. Snortland*, 329 N.W.2d 614, 616 (N.D.1983); *Tallackson Potato Co., Inc. v. MTK Potato Co.*, 278 N.W.2d 417, 422 (N.D.1979). We have often stated that a finding of fact is clearly erroneous only when, although there is some evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been made. *See, e.g., Ned Nastrom Motors, Inc. v. Nastrom-Peterson-Neubauer Company; N.P.N., Inc.*, 338 N.W.2d 64, 67 (N.D.1983); *In re Estate of Elmer*, 210 N.W.2d 815, 820 (N.D.1973).

■ Upon review of the record in this case, we conclude that the trial court's finding that Anderson was to make monthly rental payments in the amount of $1,850 under the terms of the lease is not clearly erroneous. Both Bill and Nola Weiss testified that the parties agreed to the $1,850 figure and that it was not agreed that Anderson's rental payments would fluctuate. Nola Weiss testified that Anderson agreed to pay $1,850 per month and "at times when it got tough" he would pay

what he could but would make up any balance due when he could. Anderson testified that he entered into the lease at $1,850 per month on a six-month "trial basis" and that thereafter the monthly rent was to be adjusted according to his ability to pay.

Anderson now asserts the acceptance by Bill Weiss of monthly rentals for less than $1,850, even after the commencement of this action, indicates the trial court was mistaken in finding the parties agreed to a rental rate of $1,850 per month. In *Hoge v. Burleigh County Water Management District*, 311 N.W.2d 23, 28 (N.D. 1981), we said:

"The trial court's findings are to be given the same weight as a jury verdict and, in reviewing those findings, the evidence must be viewed in a light most favorable to the findings. On appeal it is not the function of this court to substitute its judgment for that of the trial court. We must give due regard to the opportunity of the trial court to judge the credibility of witnesses, and, unless clearly erroneous, the findings of fact of the trial court, sitting without a jury, are binding upon appeal. Questions of fact decided by the trial court upon conflicting evidence are not subject to reexamination by this court. The mere fact that we might have viewed the facts differently if we had been the initial trier of the case does not entitle us to reverse the lower court." [Citations omitted.]

It is evident the trial court was presented with substantial evidence upon which its decision might have gone either way. A choice between two permissible views of the weight of evidence cannot be clearly erroneous. *In Re Estate of Elmer, supra.* Accordingly, we do not disturb the district court's finding that Anderson, under the terms of the oral lease, was to make monthly rental payments in the amount of $1,850.

Anderson also contends the trial court erred in concluding that he is personally liable for rent due under the terms of the oral lease rather than Import Repair Self Service, Inc. He proposes, relying upon *Gray v. Elder*, 61 N.D. 672, 240 N.W. 477 (1932), that the resolution of this issue is "simply a question as to whether or not Bill and Nola Weiss knew they were dealing with a corporation." In *Gray, supra*, the following principle, as summarized in the court's syllabus, was set forth:

"The managing officer of a corporation is liable as principal, even though acting for the corporation, when he deals with one ignorant of the existence of the corporation and of the relation between the officer and the corporation, and when such officer fails to inform the other party to the contract that he is acting for and on behalf of the corporation.

In *Gray, supra*, the parties entered into a contract at which time there existed a corporation known as the Elder Horse Sales Company for which Elder was the manager and agent. The action from which the case arose was brought by Gray against Elder as an individual, whereupon Elder contended the contract had been made with the corporation. The court, in *Gray*, held there existed ample evidence in the case showing that Elder contracted as an individual. The court noted that Elder did not offer to prove that certain checks, presumably those relating to the contract at issue, were signed by the corporation. The court also considered that the plaintiffs testified they knew nothing of the existence of the corporation at the time the contract was entered into, and that Elder, in asserting the contract was with a corporation, relied upon facts and circumstances such as that the name "Elder Horse Sales Company" was on Elder's office walls, on printed signs around the office, and used in newspaper advertisements. The court, in *Gray*, found these facts and circumstances to be an insufficient indication of incorporation.

Anderson attempts to distinguish the facts of *Gray, supra*, by noting that the name "Import Repair Self Service, Inc." was on checks accepted by Bill Weiss and on a large sign located in front of the business. These facts, he contends, should

have led the Weisses to realize they were dealing with a corporation.

The question of whether or not Anderson disclosed the existence of a corporation to the Weisses at the time the parties entered into the lease is a question of fact. *See, e.g., Cooper v. Hileman*, 88 S.D. 516, 222 N.W.2d 299, 300 (1974). Thus, our review of the trial court's finding that Anderson made no such disclosure in this case is subject to the "clearly erroneous" standard of Rule 52(a), N.D.R.Civ.P. Bill and Nola Weiss both testified that Anderson did not indicate to either of them at the time the parties agreed to the lease that he was entering into the lease on behalf of an existing corporation, nor were they aware at that time that Anderson was planning to incorporate his business. Nola testified she first learned of Anderson's intention to incorporate only after Anderson contacted her in February, 1980, and informed her of his intention to do so. At that time she told Anderson that they were still doing business with him as an individual. Anderson testified that he and Nola discussed the fact that he was going to incorporate his business and that she was in favor of his incorporating.

▪ The sufficiency of disclosure for purposes of the principle imposing personal liability for corporate officers and agents who fail to disclose the existence of the corporation is determined at the time the contract is entered into. *See* 3A Fletcher Cyc. Corp., Ch. 11, § 1120 (Perm.Ed.); 3 C.J.S. Agency § 370, and cases cited therein. Anderson's utilization of the name "Import Repair Self Service, Inc.," on checks and on a sign located outside the building occurred subsequent to the formation of the lease. The conflicting testimony of the parties was the only direct evidence offered at trial concerning what was disclosed by Anderson to the Weisses at the time the lease was entered into.

▪ The trial court is the ultimate arbiter of the credibility of the witnesses and the weight to be given their testimony. When more than one reasonable inference can be drawn from the credible evidence, the reviewing court must accept the inference drawn by the trier of fact. *Peterson v. Hart*, 278 N.W.2d 133, 136 (N.D.1979). The testimony of the Weisses indicates that Anderson did not make any statement or indicate he was acting, at the time the parties entered into the lease, on behalf of a corporation. The trial court, as the trier of the facts, was entitled to accept this testimony and reject any testimony to the contrary. Thus, the trial court's finding that Anderson made no disclosure to the Weisses of a corporation in existence at the time the parties entered the lease is not clearly erroneous.

▪ We also note that Anderson's argument fails to consider that in *Gray, supra,* the corporation was in existence at the time the parties contracted. Here, Import Repair Self Service, Inc., was not duly incorporated at the time the parties entered into the lease. The principle of individual liability for corporate officers and agents who fail to disclose the existence of the corporation, as expressed in *Gray, supra,* also applies to impose personal liability in the situation where a party assumes to act as officer or agent of a purported corporation which has, in fact, no existence. *See* 3A Fletcher Cyc. Corp., Chap. 11, § 1121 (Perm Ed.).

▪ A corporation cannot exist without the consent or grant of the sovereign. *Airvator, Inc. v. Turtle Mountain Manufacturing Company*, 329 N.W.2d 596, 603 (N.D.1983). Under North Dakota statutory law, the corporate existence begins upon the issuance of the certificate of incorporation by the Secretary of State, and the certificate of incorporation is conclusive evidence that all conditions precedent have been performed. § 10–19–55, N.D.C.C. Section 10–19–23, N.D.C.C., states that "all persons who assume to act as a corporation without authority so to do shall be jointly and severally liable for debts and liabilities incurred or arising as a result thereof."

Anderson asserts his business was a de facto corporation at the time the parties entered into the oral lease. A de facto

corporation has been defined as one not created in strict or substantial conformity to the governing corporation statutes, but nevertheless the result of a bona fide attempt to incorporate under existing statutory authority, coupled with the exercise of corporate powers, and recognized by the courts as such upon the ground of public policy in all proceedings except a direct attack by the state questioning its corporate existence. 8 Fletcher Cyc. Corp., Chap. 45, § 3761 (Perm Ed.).

Anderson testified that at the time the parties were negotiating the terms of the lease, the business was acting as a corporation and "papers" had been drawn up to file with the Secretary of State. It is questionable, however, in light of the above mentioned provisions of the North Dakota Business Corporation Act, whether or not the doctrine of de facto incorporation exists in North Dakota. *See* 2 Model Bus. Corp. Act Ann.2d §§ 56, 146, pp. 205, 908–09 (1971). Several jurisdictions have construed identical or similar provisions of the Model Business Corporation Act so as to eliminate the doctrine of de facto incorporation. *See, e.g., Swindel v. Kelly,* 499 P.2d 291, 299 n. 28 (Alaska 1972); *Timberline Equipment Company, Inc. v. Davenport,* 267 Or. 64, 514 P.2d 1109 (1973); *Mobridge Community Industries, Inc. v. Toure, LTD.,* 273 N.W.2d 128, 131 (S.D.1978). *But see Montana Ass'n of Underwriters v. State Department of Administration,* 172 Mont. 211, 563 P.2d 577, 581 (1977); *Bank-*

*ers Trust Company of Western New York v. Zecher,* 103 Misc.2d 777, 426 N.Y.S.2d 960, 963 (1980).

In view of our decision that the trial court's finding is not clearly erroneous—that Anderson did not disclose to the Weisses the existence of a corporation duly incorporated under the statutory law of this state or otherwise—and as the record does not indicate that Anderson made a sufficient effort in good faith to incorporate his business, pursuant to statutory authority, prior to entering into the lease so as to avail his business the status of a de facto corporation,[1] we need not determine whether or not the doctrine of de facto incorporation should apply in this state.

■ The fact that the Weisses obtained knowledge of the existence of the corporation in February, 1980, and accepted rental payments for less than $1,850 does not necessarily compel the conclusion that the oral contract was changed thereby. *See* §§ 9–09–05 and 9–13–09, N.D.C.C.[2] The existence of a contractual agreement is a finding of fact governed by Rule 52(a), N.D.R.Civ.P. *See North Central Jobbers, supra.* Nola Weiss testified she informed Anderson, after learning of his plans to incorporate the business, that they were still doing business with him as an individual. She also testified the parties did not agree at any time that Anderson was not obligated to pay the full monthly rental of

---

1. There has been much conflict among those courts that recognize the doctrine of de facto incorporation with respect to what is sufficient to confer upon an association such a status. A commentator on the subject, however, has attempted to delineate the elements of a de facto corporation:

    "1. The existence of a charter or law under which a corporation with the powers which it undertakes to exercise may lawfully exist.

    "2. An effort in good faith to incorporate thereunder.

    "3. An actual user or exercise of corporate powers.

    "When these three requisites appear, it is generally held there is a de facto corporation notwithstanding irregularities or defects in the creation of the corporation or a failure to comply in all respects with the governing stat-

utes." 8 Fletcher Cyc. Corp., Chapt. 45, § 3777 (Perm Ed.).

2. Section 9–09–05, N.D.C.C., which sets forth requirements for the alteration of an oral contract, reads as follows:

    "A contract not in writing may be altered in any respect by consent of the parties in writing without a new consideration, or by oral consent of the parties with a new consideration, and is extinguished thereby to the extent of the alteration."

    The substitution of a new obligation with the intent to extinguish an old obligation or the substitution of a new debtor with the intent to release an old debtor is a novation. § 9–13–10, N.D.C.C. A novation is made by contract and is subject to all the rules concerning contracts in general. § 9–13–09, N.D.C.C.

$1,850. Anderson testified, however, he discussed a reduction in rent with Bill Weiss and that he believed they had orally agreed to such a reduction.

 When there is substantial evidence upon which the trial court's decision might have gone either way, it necessarily follows that a decision either one way or the other cannot be clearly erroneous. *Peterson, supra.* Thus, in light of the conflicting evidence in this case, we conclude the trial court's finding that the parties did not renegotiate the terms of the lease so as to reduce the monthly rent from $1,850, or substitute as a party to the lease Import Repair Self Service, Inc., for Anderson, is not clearly erroneous.

Accordingly, the judgment of the District Court of Burleigh County is affirmed.

SAND, PEDERSON and GIERKE, JJ., concur.

VANDE WALLE, J., having deemed himself disqualified after hearing the oral arguments, did not participate further in this case.